BARNES, J.,
for the Court:
¶ 1. A Coahoma County Circuit Court jury found Jerry McBride guilty of sexual battery of his minor daughter.[1] The trial court sentenced McBride to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). McBride now appeals his conviction and sentence, claiming that his right to a speedy trial was violated, and there was insufficient evidence to sustain the verdict. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. In May 2006, McBride was indicted for sexual battery of his daughter, who was under the age of fourteen at the time of the incident, pursuant to Mississippi Code Annotated section 97 — 3—95(l)(d) (Rev.2006). The indictment stated the battery occurred “on or about or between January 2002, and December 2005” in Coa-homa County. McBride was subsequently arrested, arraigned, and assigned a court-appointed attorney.
*177 ¶ 3. McBride did not go to trial until several terms of court had passed. The court docket indicates that in September 2007, an order setting trial was filed. Representations at the pre-trial hearing indicated that this trial setting was for November 2007. Then, the record shows that in December 2007, an order reset trial for January 2008, but in January 2008 an agreed order reset trial to February 2008. In December 2007, McBride filed two pro se “Motion[s] for Directed Verdict of Acquittal,” within days of one another, complaining that he had been incarcerated for sixteen months in violation of his constitutional rights. Therefore, he asked that the charges against him be dismissed. Additionally, he noted he never received a copy of the indictment, never had a preliminary hearing, and never asked for a continuance of his trial, among other complaints. Also, in January 2008, McBride, dissatisfied with his court-appointed attorney’s performance, filed a motion requesting termination of the services of his attorney. Pretrial hearings were held on McBride’s motions, which were denied. The trial judge, considering McBride’s pro se motions together, stated that McBride’s “most significant complaint” was concerning the delay in his trial. However, the trial judge made a detailed analysis of the appropriate factors outlined in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) regarding the speedy-trial complaint and found no prejudice.
¶ 4. McBride’s trial commenced on February 19, 2008. The State produced three witnesses: the victim, a middle-school counselor, and a Department of Human Services (DHS) specialist. The victim, who was eighteen years old at the time of trial, testified regarding two sexual incidents with McBride. At the time of the sexual incident, she was approximately eleven years old and McBride was living with his mother. He drove her and his seven-year-old son to “a friend’s house,” which was in “the Brick Yard” in Clarks-dale, Mississippi. When they arrived at the house, nobody was home. McBride took his daughter to the back of the house. He began hugging and touching her. Then, he pulled down her pants, unzipped his pants, and put his penis in her vagina. She testified she fought and screamed, but she did not tell anyone about the incident because she was scared.
¶ 5. The victim also testified about a second sexual incident with McBride that occurred when she was approximately fifteen years old. She and McBride went on the back roads outside of Clarksdale in order to let her drive. McBride’s daughter testified she did not want to go with him. When they were approximately thirty minutes from Clarksdale, while she was driving, McBride began fondling her breasts and touching her between her legs, on top of her clothes. The victim, who lives with her mother, admitted that McBride had been mostly absent from her life and did not provide her money or material possessions. Also, there was “bad blood” between her mother and her father, who did not live together. The victim stated these were the only incidents of sexual abuse by her father.
¶ 6. The next witness for the State was a counselor from Oakhurst Middle School in Clarksdale. • She testified that the victim approached her at school. Based on what the victim told her, the counselor alerted DHS, which came to the school and interviewed the victim. The last witness for the State, a family-protection specialist with DHS, explained she was employed by DHS to investigate allegations of child abuse. She testified that she investigated the allegation and spoke with the victim, as well as the victim’s family members. The victim had a “forensic interview” with DHS in December 2005.
*178 ¶ 7. No witnesses testified for the defense. The jury returned a verdict of guilty, and McBride was sentenced to twenty-five years in the custody of the MDOC. McBride filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied. The trial court granted McBride’s motion for an out-of-time appeal, and he now appeals his conviction and sentence.
ANALYSIS
I. Speedy Trial
¶ 8. McBride claims that he was denied his constitutional and statutory rights to a speedy trial, as he was incarcerated approximately nineteen months before being brought to trial. McBride argues it was error for the trial court to dismiss his pro se motions to have the charges dismissed; the dismissal was sought, in part, on his constitutional right to a speedy trial. However, McBride did not argue before the trial court that his statutory right to a speedy trial was violated; he raises this issue only on appeal.
¶ 9. The standard of review regarding claims of speedy-trial violations is as follows:
Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court’s standard of review, this Court will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court’s finding of good cause, this Court will ordinarily reverse. The [Sjtate bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion.
DeLoach v. State, 722 So.2d 512, 516 (¶ 12) (Miss.1998) (internal citations omitted).

A. The Constitutional Claim

¶ 10. The Sixth Amendment to the United States Constitution states that “the accused shall enjoy the right to a speedy and public trial.” U.S. Const, amend. VI. The Fourteenth Amendment applies the federal constitutional right to the states. Klopfer v. North Carolina, 386 U.S. 213, 222-23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Also, Article 3, Section 26 of the Mississippi Constitution of 1890 guarantees the criminal defendant a right to “a speedy and public trial.” While there is no set time that a defendant must be brought to trial, the United States Supreme Court has set out factors to consider when a challenge is made on the issue of the constitutional right to a speedy trial in Barker, 407 U.S. at 530, 92 S.Ct. 2182. The factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Stark v. State, 911 So.2d 447, 450 (¶ 7) (Miss.2005) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). No mathematical formula exists for weighing and balancing the Barker factors, and no one factor is dispositive. The totality of the circumstances must be considered. Jefferson v. State, 818 So.2d 1099, 1106 (¶ 11) (Miss.2002) (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182).
¶ 11. The following time line of events is pertinent to the Barker analysis:
May 30, 2006: McBride’s indictment
August 4, 2006: McBride served with capias, arrested
August 10, 2006: McBride arraigned
August 10, 2006: McBride appointed an attorney
*179 September 21,2007: Docket entry (read in conjunction with hearing transcript) reflects trial setting for November 2007
December 21, 2007: Order setting trial for January 22, 2008
December 26, 31, 2007: McBride flies two pro se “Motion[s] for Directed Verdict of Acquittal” requesting dismissal of his case, for reasons including violation of his right to a speedy trial
January 7, 2008: Agreed order resetting trial for February 19,2008
February 19,2008: McBride’s trial
For constitutional speedy-trial claims, both the United States Supreme Court and the Mississippi Supreme Court have clearly held that the starting point for the calculation of the time begins with the defendant’s formal indictment or information or arrest. United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Stark v. State, 911 So.2d 447, 450 (¶ 7) (Miss.2005) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)); Price v. State, 898 So.2d 641, 647 n. 1 (Miss.2005) (citing Doggett v. United States, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). Thus, the precise point at which the right attaches is when the individual has been accused. Stark, 911 So.2d at 450 (¶ 7) (citing Hersick v. State, 904 So.2d 116, 121 (¶ 5) (Miss.2004)); Beavers v. State, 498 So.2d 788, 790 (Miss.1986) (overruled on other grounds) (citing Perry v. State, 419 So.2d 194, 198 (Miss.1982)). The Beavers court explained that “[o]ne’s right to a speedy trial as a matter of common sense has reference to that point in time when the prosecution may begin to crank up the machinery of the criminal justice process.” Beavers, 498 So.2d at 790. Beavers continues that the point of beginning is “the time of arrest or indictment, whichever comes first.” Id. at 790 n. 2 (quoting United States v. Gonzalez, 671 F.2d 441, 444 (11th Cir.1982); United States v. Walters, 591 F.2d 1195, 1200 (5th Cir.1979)); see also Price v. State, 898 So.2d 641, 647 n. 1 (Miss.2005) (commencement of speedy-trial period “begins when a person is ‘accused,’ which can be arrest, indictment, or any formal charge, whichever is first to occur”). Therefore, McBride’s constitutional right to a speedy trial attached when he was indicted on May 30, 2006.[2]

1. Length of the Delay

¶ 12. Any delay over eight months is considered presumptively prejudicial, thereby triggering a full Barker analysis. Stark, 911 So.2d at 450 (¶ 7) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). Here, as stated earlier, McBride’s trial was held approximately seventeen months from the date of his indictment; thus, the delay is presumptively prejudicial, and a Barker balancing test is required.

*180
2. Reason for the Delay

¶ 13. The second factor considers the reason for the delay. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). Once the delay is found presumptively prejudicial, “the burden of proof shifts to the State to show cause for the delay.” Id. at (¶ 11) (citing Price v. State, 898 So.2d 641, 647 (¶ 10) (Miss.2005)). However, not all reasons for a delay in trial are cause for dismissal of the charge on the speedy-trial grounds. Different reasons for the delay are given different weights. Birkley v. State, 750 So.2d 1245, 1250 (¶ 16) (Miss.1999) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). For example, if the State deliberately attempts to delay the trial in order to hamper the defense, it should be weighed against the State. Neutral reasons for delay such “as negligence or overcrowded dockets” are weighed less heavily against the State, but will be considered. Bonds v. State, 938 So.2d 352, 357 (¶ 11) (Miss.Ct.App.2006) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). Additionally, a missing witness is a valid reason justifying appropriate delay. Birkley, 750 So.2d at 1250 (¶ 16) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182).
¶ 14. In the instant case, the trial court, after a detailed analysis, court term by court term, found the delay attributed to several reasons, none of which could be weighed heavily against the State, and we agree. Reasons given were the timing of McBride’s arrest during the court term, the timing of the mini-terms, administrative oversight or mere negligence, docket overcrowding, and the availability of a key witness for the State.[3]
¶ 15. The trial court found that the next term of court, after McBride was indicted, began in July 2006; however, McBride was not taken into custody until August 4, 2006, which was midway through the court term. Therefore, his case was not placed on the trial calendar for that term. This delay cannot be attributed to the State.
¶ 16. The next term of court available for McBride was a non-regular mini-term held in November 2006. However, the mini-term addressed those cases which had been scheduled but were untried from the July 2006 term. The trial court found that because McBride’s case was not set for the July 2006 term, it was not placed on the November 2006 mini-term.
¶ 17. January 2007 was the next regular term of court. The trial court found that “through no deliberate efforts on the part of the State,” McBride’s case “was simply left off’ the trial calendar for the January 2007 term of court because of the “crunch of cases being set for trial” during this term. The trial court found this failure regrettable, but it attributed the delay “to mere negligence or oversight.” The trial court found McBride’s case was not put on the July 2007 term of court for the same reason.
¶ 18. The next term of court was a mini-term in November 2007, and McBride’s case was then set for trial, pursuant to an order dated September 2007 (as indicated by docket entry and representations at the pre-trial hearing). How *181 ever, because of an overcrowded docket, the case was not heard. Additionally, the State’s witness, who conducted the forensic interview with the victim, was no longer employed by DHS; thus, the State had to find another expert witness. McBride’s case was then set for trial in the January 2008 term on January 22, 2008. However, by agreement of both counsel for the prosecution and defense, and because the State’s alternate expert witness on child abuse was not available on this date due to maternity leave, the case was reset for the same term on February 19, 2008. Additionally, in a hearing on February 14, 2008, McBride requested a continuance in order to have potential new counsel become familiar with his case.
¶ 19. The reason of an overcrowded docket can only be weighed slightly against the State. Therefore, we cannot find that the trial court abused its discretion in finding that there was no evidence that the State deliberately delayed McBride’s trial. Thus, this factor should not be weighed heavily against the State.

3. Assertion of the Right

¶ 20. The third Barker factor is whether the defendant asserted his right to a speedy trial. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). While a defendant has no duty to bring himself to trial, he will gain “more points” under this factor if he has asserted his right to a speedy trial. Brengettcy v. State, 794 So.2d 987, 994 (¶ 17) (Miss.2001) (quoting Jaco v. State, 574 So.2d 625, 632 (Miss.1990)). “[Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.” Barker, 407 U.S. at 532, 92 S.Ct. 2182. “However, a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial.” Brengettcy, 794 So.2d at 994 (¶ 17) (citing Perry v. State, 637 So.2d 871, 875 (Miss.1994)). A motion for dismissal seeks discharge, not trial. Perry, 637 So.2d at 875 (citing Adams v. State, 583 So.2d 165, 170 (Miss.1991)).
¶ 21. Here, McBride filed two pro se motions to dismiss his charges due, in part, to a violation of his constitutional right to a speedy trial. The record does not reflect that McBride ever filed a motion demanding a speedy trial. We also note that these motions were the first time McBride or his trial counsel had complained about the delay in his trial. Further, McBride filed these motions in December 2007, after the order of December 21, 2007, which set trial for one month later on January 22, 2008. Accordingly, with these motions, McBride was not trying to have his case heard but, rather, have it dismissed. We conclude the trial court correctly found this factor did not weigh in favor of McBride.
A Prejudice
¶ 22. The fourth Barker factor is prejudice to the defendant. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). The United States Supreme Court has held that prejudice to the defendant be assessed according to the following interests: “(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. The last interest is the most important and, if violated, is the most prejudicial to the defendant.” Id. at 452-53 (¶ 28) (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182).
¶ 23. When asked by the court about prejudice, McBride only claimed that matters would be “fresher” in his mind if he had been tried earlier. We agree with the trial court that this is not a significant prejudice, and more importantly, we find no evidence that McBride’s defense was impaired by the delay in trial. The dissent *182 chastises defense counsel for not speaking up on McBride’s behalf when asked about possible prejudice he suffered, but we do not have the same impression of the proceedings. Counsel attempted to explain to his client what the judge was asking. Further, there is nothing in the transcript to show that counsel would have brought up anything different than McBride in response to the judge’s questions. Furthermore, surely the judge was well aware that pretrial incarceration, anxiety, and concern are a form of prejudice. We also note that although McBride is now represented by different counsel on appeal, no further evidence of possible prejudice to McBride was identified in the appellate brief.
¶ 24. The court’s final obligation under Barker is to weigh the factors on a case-by-case basis. Birkley, 750 So.2d at 1253 (¶ 30) (citing Kinzey v. State, 498 So.2d 814, 816 (Miss.1986)). Taking the four factors and the totality of the circumstances into consideration, while there was a delay in McBride’s trial, there is no evidence the State deliberately created the delay, nor did McBride object in any way to the delay until the case was set for trial a month later. When McBride did object, he requested the charges be dropped; he did not request that the case be heard sooner. Lastly and most importantly, there was no prejudice to McBride’s defense due to the delay. The trial court carefully and thoroughly examined the evidence relevant to the Barker analysis. While the delay was regrettable, we conclude the trial court was correct in finding McBride’s constitutional right to a speedy trial was not violated.

B. Statutory Right

¶ 25. The right to a speedy trial is also guaranteed by Mississippi Code Annotated section 99-17-1 (Rev.2007), which states: “Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” McBride is correct that the trial court did not make mention of his statutory right to a speedy trial in his written order; however, McBride did not raise the issue of violation of his statutory right to a speedy trial in his motion for dismissal. Even so, we shall consider the merits of this issue because the statutory 270-day requirement was addressed by the prosecution and defense at the hearing on the motions.
¶ 26. McBride was arraigned on August 10, 2006. McBride’s trial was not until February 19, 2008, well past the 270-day requirement, and no continuances were filed or granted. However, McBride did not file his motions to dismiss, which were partially based on a constitutional speedy trial violation, until December 26 and 31, 2007, well past the 270-day requirement. Additionally, as stated earlier, McBride only raised his constitutional right to a speedy trial, not his statutory right, in his motions to dismiss.
¶ 27. This Court and the supreme court have held that if a defendant fails to raise this issue within 270 days of his arraignment, he “effectively acquiesced to the delay.” Malone v. State, 829 So.2d 1253, 1257 (¶ 11) (Miss.Ct.App.2002); see also Walton v. State, 678 So.2d 645, 649-50 (Miss.1996). We also agree with the State that Guice v. State, 952 So.2d 129 (Miss.2007) is analogous to the case currently before us. In Guice, the supreme court held the defendant waived his statutory right to a speedy trial within 270 days of arraignment because he did not complain about not being tried until 463 days after arraignment. Id. at 141-42 (¶¶26, 29). Phelan Guice complained by way of a pro se motion to dismiss for failure to provide *183 a speedy trial. Id. at 141 (¶ 26). The Guice court concluded that “a defendant does have some responsibility in asserting the right to a speedy trial.” Id. (citing Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996)). Here, McBride did not raise his statutory right to a speedy trial specifically. When he raised his constitutional right to a speedy trial, it was well past the 270-day requirement of the statute. Accordingly, this issue is without merit.
II. Sufficiency of the Evidence
¶ 28. McBride raises a specific point regarding the sufficiency of the evidence: he claims the State did not prove the element of the victim’s age within the time frame of the indictment and subsequent jury instructions. The indictment stated that McBride sexually penetrated the victim, who was under the age of fourteen, “on or about or between January 2002, and December 2005.” McBride argues that the only evidence introduced at trial was that the victim was eleven years old during the time of the sexual battery, and since she was born on November 11, 1989, the incident could not have occurred on a date after January 2002, as the indictment and jury instructions state.
¶ 29. Although not mentioned by McBride, this issue relates to the trial court’s denial of his motion for a directed verdict or his motion for a JNOV. Both a motion for directed verdict and a motion for JNOV challenge the sufficiency of the evidence presented to the jury. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). If the facts and inferences “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” this Court must reverse and render. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, if the evidence is such that, “ ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id. All credible evidence supporting the defendant’s guilt will be accepted as true, and the evidence will be considered in the light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 30. McBride was charged with sexual battery under section 97 — 3—95(l)(d), which states, in pertinent part, that: “A person is guilty of sexual battery if he or she engages in sexual penetration with ... [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.” The instruction to the jury regarding these elements states that the jury must “find from the evidence in this case beyond a reasonable doubt that ... McBride, on or about or between January 2002 and December 2005, in Coahoma County, Mississippi, did unlawfully, willfully and feloniously, engage in sexual penetration by inserting his penis into the vagina of [the victim],” that she was a female child, under the age of fourteen years of age, and that McBride was her father, “then you shall find the Defendant guilty of Sexual Battery.” (Emphasis added.)
¶ 31. We note testimony was presented at trial showing the crime of sexual battery occurred during the first incident when McBride took the victim to his friend’s house, not during the second incident when *184 he and the victim went for a drive. The victim testified during direct examination that she was “around eleven” at the time of the first incident. During cross-examination, she admitted that she told the DHS forensic interviewer she was around thirteen or fourteen years old the time of the first incident, but she was mistaken. On redirect, the victim stated that she could have been twelve years old when the crime occurred.
¶ 32. McBride is factually correct that the victim was actually twelve years old in January 2002, the time of the sexual battery. Regardless, there was sufficient evidence presented to the jury that the victim was under the age of fourteen during the first incident, which is the requirement of the statute. She admitted that her age of eleven or twelve was an approximation, which is completely reasonable under the circumstances. Further, there was no testimony presented at trial that she was over the age of fourteen at the time of the first incident.
¶ 33. The time frame in the indictment and jury instructions of the sexual battery was an approximation, which is proper. In Baker v. State, 930 So.2d 399, 404-05 (¶¶ 8-10) (Miss.Ct.App.2005), this Court found the broad time span of an indictment for sexual battery of one-and-one-half to two-and-one-half years was not improper as the time frame provided by the indictment was not a necessary element of the offense. Here, as long as sufficient evidence at trial proved the victim was under the age of fourteen during the first incident, the time frame of the incident is not relevant because it is not an element of the crime.
¶ 34. The dissent would have this Court discharge McBride from the custody of the MDOC because no reasonable juror could conclude that McBride had sexually penetrated his daughter “between” January 2002 and December 2005. However, we note the indictment does not state “between ” January 2002 and December 2005, as the dissent contends, but “on or about or between ” January 2002 and December 2005, and there is no need for the date in the indictment to be more specific. The only time an exact date would be necessary is if the date were jurisdictional. However, here the exact date of the crime is not jurisdictional, since the evidence of when the sexual battery occurred was not near the date of the victim’s fourteenth birthday, November 11, 2003.
¶ 35. The dissent also claims McBride needs to be released because there is inconsistent testimony about the victim’s age during the sexual battery which contributes to insufficient evidence for a conviction. However, we find no error in this regard. It is not uncommon in cases dealing with the sexual crimes against a child-victim that the time of the crime is less specific in the indictment. Because of the very nature of the crime, it is secret and not discovered, if at all, until years later. Further, the trauma of sexual crimes, especially against a child, makes it very difficult for the victim to identify an exact date of the crime. Additionally, we note that the defense in this case made no objection to the indictment as written and never filed a motion to quash or amend the indictment. While the testimony of the victim as to her age during the incident’s time frame is vague, we maintain that, viewing the evidence in the light most favorable to the State, there is sufficient evidence for a reasonable juror to find that the victim was sexually battered well before her fourteenth birthday and within the parameters of the indictment’s stated dates of “on or about or between” January 2002 and December 2005.
CONCLUSION
¶ 36. The trial court did not err in dismissing McBride’s motion to dismiss *185 the charges. Further, there was no violation of McBride’s constitutional or statutory rights to a speedy trial. Finally, the trial court did not err in denying McBride’s motion for a directed verdict or his motion for a JNOV as there was sufficient evidence to convict him of sexual battery. Accordingly, we affirm the trial court’s judgment.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING AND MAXWELL, JJ., CONCUR. ROBERTS, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND ISHEE, JJ.

. The name of the victim is not identified to protect her identity.

. We note that in the trial judge’s order determining that McBride's delay was presumptively prejudicial, he made the determination from the point of McBride’s arrest. Here, the indictment pre-dates the arrest; so the right to a speedy trial attached at the point of the indictment. We acknowledge that there is some Mississippi case law that merely states the constitutional right to a speedy trial attaches at the point of "arrest,” (see, e.g., Murray v. State, 967 So.2d 1222, 1230 (¶ 23) (Miss.2007)) (citing Atterberry v. State, 667 So.2d 622, 626 (Miss.1995)) which is accurate most of the time, as pre-arrest indictments are much less prevalent in state court than in federal court. See Beavers, 498 So.2d at 790. However, because this authority has only been citing only a portion of the relevant precedent (that the right attaches at the earlier of indictment, information, or arrest), it has lead to some confusion, such as in the case at bar.

. The dissent criticizes the majority for finding an overcrowded docket was the sole reason for the circuit court’s delay and instead contends the reason for the delay was McBride was "lost in the system"; thus, his constitutional right to a speedy trial was violated, and he should be released. The dissent cites to Yarber v. State, 573 So.2d 727, 729 (Miss.1990) for support of this contention, claiming the defendant in this case was discharged because his trial was carried over to the trial court’s next term of court without any explanation for the delay. However, Yar-ber is distinguishable from the instant case, because we have a detailed explanation of the delays by the State and the trial court.